[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a summary process action in two counts in which the plaintiff seeks possession of a dwelling unit alleging the lapse of time termination of a one-year written lease, which tenancy continued thereafter on a month-to-month basis. The parties appeared on March 31, 2000 for a summary process trial. Having CT Page 4107 heard the evidence and the arguments of the parties, the Court finds in favor of the plaintiff and judgment for possession may enter for the plaintiff as set forth below.
 FACTS
The Court finds the following facts: The plaintiff, William M. Cornish, is the owner and lessor of the rental premises known as 32 Tilley Street, basement apartment, New London, CT 06320 (hereafter "premises"). By written agreement, the plaintiff leased the premises to the defendant for a one-year term on November 25, 1998, and thereafter on a calendar month to month basis. The lease terminated by lapse of time. The landlord plaintiff first served a Notice to Quit on the tenant on November 24, 1999 and acting pro Se, commenced a summary process action (CV10-99-15659 S). This Notice to Quit was deemed defective because it did not provide 30 days notice as required for Section 8 tenants. The defendant served a new Notice to Quit on January 24, 2000 to vacate the premises on or before February 28, 2000 and filed the Complaint in the instant action on March 8, 2000. The defendant continues in possession of the premises.
The defendant, acting pro se, filed an answer in which she agreed with all of the allegations in count one of the Complaint and agreed with the allegations of count two of the complaint with the exception of paragraph four which alleged that her original right or privilege to occupy the premises has terminated. In her answer, the defendant also included certain special defenses. Three special defenses alleged by the defendant have no bearing on the allegations in the complaint as they relate to the payment of rent. These allegations are that all rent has been paid to her landlord, that rent was offered to her landlord and that no rent was due because of certain housing code violations. This summary process action is not brought based on non-payment of rent and the plaintiff is not claiming any failure to pay rent. Thus, the special defenses concerning payment of rent do not apply.
The fourth special defense alleges that the eviction is being brought because the defendant contacted her landlord and public officials or agencies with regard to complaints about her apartment. This special defense references C.C.S. § 47a-20
and 47a-33. The answer does not allege a date on which any contacts were made. CT Page 4108
At the hearing, the defendant stated that she made complaints to the landlord about sewage backup and water damage to the apartment and that the landlord made certain efforts to repair the problem. According to the defendant, the repairs made were not permanent and the problems reoccurred. Defendant's Exhibit 2 shows that the apartment failed a HUD inspection that took place on December 15, 1999 due to water leakage, a sewer plug leakage in the bathroom, infestation and an electrical hazard.
The landlord plaintiff testified that as the lease neared the end of its one year term, he elected to terminate because the defendant was not a desirable tenant. He stated that at times a man lived at the apartment and that the utility bills were considerably higher than those of his other tenants. The Court credits this testimony. The defendant indicated that the man who lived with her on occasion was the father of her child and that the utility bills were higher because the apartment was a basement apartment unit and she needed to have the heat on more than other tenants to dry out the apartment from the water damage. The Court credits these statements as well.
Although the defendant indicated that she made complaints about the apartment to the landlord, she also stated that she did not believe the landlord plaintiff terminated the lease in retaliation against her for making the complaints. Indeed, the defendant indicated that she did not really disagree with the action taken by the landlord, but was simply looking for additional time to attempt to find new housing for herself and her son.
 DISCUSSION
The defendant's special defense of retaliation references two statutes: C.G.S. Section 47a-20 and 47a-33. As explained inAlteri v. Layton, 35 Conn. Sup. 261 (1979), these two sections are different in application. Id. at 263-65. Section 47a-20
establishes limitations on the remedies of a landlord and effectively creates a presumption of retaliatory action if a tenant takes certain enumerated actions regarding the reporting of housing code violations. Section 47a-33, on the other hand, "establishes a tenant's right to claim a defense of retaliatory eviction where the tenant has reported housing code violations to the appropriate authorities." Id. at 263. Under Section 47a-20, certain actions of the tenant will create a presumption that the landlord acted out of retaliation, and the landlord is entitled CT Page 4109 to rebut that presumption with substantial countervailing evidence. Under Section 47a-33, however, no presumptions are permitted and the tenant by affirmative proof is required to prove that the landlord's primary motive in seeking eviction was in retaliation for the tenant's reporting of housing code violations. The burden of persuasion for this affirmative defense rests on the tenant asserting it. Id. at 265.
The Court finds in favor of the plaintiff under both sections. Under Section 47a-20, even if the violations were sufficient to raise a rebuttable presumption, and even if the landlord is deemed to have notice of the complaints in view of the tenant's request for repairs, the Court finds that the presumption of retaliation is rebutted by the landlord's testimony as well as the defendant's own statement at the hearing that she did not think the landlord was acting out of retaliation.
Under Section 47a-33, the defendant has failed to establish by affirmative proof that the eviction was retaliatory. Again, her own statements that she did not believe the plaintiff's actions were retaliatory and that she did not disagree with his actions, but was merely looking for additional time, undercut her previous claim of retaliation. Moreover, the plaintiff's testimony as to his reasons for termination establish that he did not act out of retaliation.
The fact that the unit failed a HUD inspection on December 15, 1999 is not sufficient to establish the retaliation. The original notice to quit was served well before December 15 and the defendant offered no evidence as to when HUD was notified or whether she notified HUD. The mere fact that HUD conducted an inspection in December does not establish that the inspection occurred because the defendant complained or contacted any authorities. In fact, in the letter to the plaintiff notifying him that the unit failed the inspection, (contained in Defendant's Exhibit 2) the Thames Valley Council for Community Action, Inc. informed Mr. Cornish that "this years annual Section 8 inspection" revealed certain violations. This suggests the inspection was an "annual" inspection. Since the defendant offered no evidence that the inspection occurred as a result of her actions, she has failed to meet her burden on this issue.
In view of all the evidence, the Court finds the allegations of the Complaint to have been established. As to the fourth special defense, the Court finds that the defendant has failed to CT Page 4110 establish that the summary process action was brought due to retaliation. Here, the lease the defendant had with the landlord simply came to an end and the landlord elected not to renew.
For the foregoing reasons, judgment for possession may enter for the plaintiff.
Jongbloed, J.